### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>1411 K Street N.W. Suite 1300<br>Washington DC 20005,<br><br>        Plaintiff,<br>  v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY,<br>500 C Street, SW<br>Washington, DC 20472,<br><br>and<br><br>DEPARTMENT OF HOMELAND SECURITY,<br>2707 Martin Luther King Jr Ave SE<br>Washington, DC 20528,<br><br>        Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br><br>Civil Action No.: _____ |

## INTRODUCTION

1.    This case challenges the Federal Emergency Management Agency ("FEMA") and Department of Homeland Security's ("DHS") failure to timely and adequately search for, and disclose, records concerning FEMA's spending on energy-related projects and assistance, including funding for fossil fuel-related projects as compared to renewable energy and energy efficiency alternatives.

2.    Each year, FEMA awards billions of dollars in assistance to states, localities, and others to rebuild after disasters, with the goal of making communities more resilient to future weather and related calamities, which are occurring with increasing frequency due to the climate emergency.

3. Seeking to learn more about FEMA's funding for fossil-fuel related infrastructure and assistance as compared to renewable energy and other alternative infrastructure, on December 17, 2021, the Center for Biological Diversity submitted a request under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* ("FOIA") for records concerning this spending, and FEMA's work on the urgent transition away from fossil fuels.

4. More than a year after the Center submitted its FOIA request, FEMA and DHS have neither produced any responsive records nor provided any expected timeline for production. Accordingly, the Center brings this suit pursuant to FOIA, seeking declaratory and injunctive relief to require the prompt production of all responsive records.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

6. Venue is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

7. Injunctive relief is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 2202. Declaratory relief is appropriate under 28 U.S.C. § 2201.

## PARTIES

8. Plaintiff Center for Biological Diversity ("Center") is a national, non-profit conservation organization with offices throughout the United States, including Washington DC. The Center has more than 1.7 million members and online activists who care about the country's urgent need to expedite the renewable energy transition and protecting human health, the natural environment, and species from the ravages of the climate emergency and environmental degradation. The Center's Energy Justice Program focuses on advancing environmental justice,

energy justice, and climate community resilience in the renewable energy space, and specifically fights to decarbonize the utility sector.

9. The Center is a leading advocate for the President to declare a climate emergency and unlock crucial executive powers to further the vital clean energy transition. The Center's 2022 Report titled *The Climate President's Emergency Powers* details many steps the President and Executive Branch can take to address the climate crisis, including with FEMA programs. *See* Jean Su and Maya Golden-Krasner, *The Climate President's Emergency Powers: A Legal Guide To Bold Climate Action From President Biden* (Center, Feb. 2022), https://www.biologicaldiversity.org/programs/energy-justice/pdfs/Climate-Emergency-Powers-Report.pdf.  The Center has spent and will continue to spend financial resources advancing this campaign, which requires a better understanding of how FEMA and other federal agencies are currently carrying out their post-disaster and mitigation programs.

10. Accordingly, the Center and its members are harmed by Defendants' failure to provide records concerning FEMA's funding and activities related to the clean energy transition, which prevents the Center from gaining a fuller understanding of the agency's activities, priorities, and decision-making, and therefore undermines the Center's ability to further its programmatic objectives.

11. Defendant Department of Homeland Security is the executive branch department responsible for the supervision, management, and control of FEMA's activities and its compliance with applicable laws.

12. Defendant FEMA is a federal agency within the Department of Homeland Security with custody and/or control of the records requested in the Center's FOIA request, and is subject to FOIA pursuant to 5 U.S.C § 552, *as amended*.

**STATUTORY BACKGROUND**

13. FOIA establishes the public's right, with certain narrow exceptions, to access federal agency records. Its basic purpose is government transparency.

14. FOIA imposes strict deadlines on federal agencies when they receive a request for records. Within 20 working days of receiving a FOIA request, an agency must determine if it will release requested records and notify the requester of its determination and the reasons therefor, and the right to appeal an adverse agency determination. 5 U.S.C § 552(a)(6)(A)(i).

15. FOIA requires each agency to make reasonable efforts to search for records in a manner reasonably calculated to locate all records responsive to the FOIA request. *Id.* § 552(a)(3)(C)-(D). The cut-off date for the agency's search is the date that the agency conducts the search and not any earlier date.

16. FOIA requires federal agencies to promptly disclose requested records, *see id.* §§ 552(a)(3)(A), (a)(6)(C)(i), and places the burden on the agency to prove that it may withhold responsive records from a requester. *Id.* § 552(a)(4)(B).

17. FOIA provides that the U.S. district courts have jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id*. § 552(a)(4)(B).

**FACTUAL BACKGROUND**

A.   **The Federal Emergency Management Agency And Fossil Fuel Infrastructure**

18. Under the Stafford Act, FEMA is charged by Congress to address the "loss of life, human suffering, loss of income, and property loss and damage" experienced by communities

across the country as a result of weather and other disasters. 42 U.S.C. § 5121(a). After the declaration of a Major Disaster, billions of dollars are frequently allocated toward rebuilding efforts in impacted areas.

19. The Stafford Act also directs FEMA to address both "comprehensive disaster preparedness and assistance," and "hazard mitigation measures" to reduce losses from future disasters. *Id.* § 5121(b). FEMA's role thus includes direct assistance to individuals, nonprofit facilities, and local and state governments to rebuild after disasters, and additional funding to build resilience that will help mitigate against future disasters. *Id.*

20. These expenditures often support *status quo*, fossil-fuel related infrastructure. This includes deployment of diesel generators; repair of furnaces and other fossil-fuel heating systems; and rebuilding fossil-fuel-based power generation, power lines, and related electricity and pipeline transmission systems.

21. Across the country, fossil-fuel-based infrastructure is disproportionately concentrated in communities of color and low-wealth communities, causing asthma, cancer, and other serious health harms to residents exposed to the pollution these facilities inevitably emit into the air and water. By funding the repair of this fossil-fuel-based infrastructure, FEMA is thereby exacerbating, rather than alleviating, the harms these communities face.

22. In December, 2021 FEMA issued a Report entitled *Resources for Climate Resilience*, in which FEMA recognized that the hazards it is charged with addressing are being exacerbated by climate change, and discussed actions FEMA is taking to address these challenges. However, the Report does not mention efforts to transition communities away from fossil fuels and toward renewable energy alternatives.

23. Around the same time period, FEMA also issued its 2022-2026 Strategic Plan. That Plan similarly fails to at all address the vital transition away from the fossil-fuel economy and the urgency of the rapid transition to renewable energy.

**B.    The Center's FOIA Request**

24. Seeking to better understand FEMA's funding for fossil fuel projects as compared to renewable energy-related alternatives, on December 17, 2021, the Center sent a FOIA request asking for the records, from October 1, 2017 to the date FEMA conducts its search:

   1. Addressing a transition from fossil fuels to renewable energy sources in connection with assistance provided under the Hazard Mitigation Grant Program, Building Resilient Infrastructure & Communities Program, Public Assistance Program, or other FEMA assistance programs;

   2. Detailing how much FEMA funding in fiscal years 2018, 2019, 2020, and 2021 was directed to the acquisition or use of fossil fuel infrastructure, including but not limited to coal and natural gas power plants and related infrastructure and fossil-fuel powered portable generators;

   3. Detailing how much FEMA funding in fiscal years 2018, 2019. 2020 and 2021 was directed to the acquisition of renewable energy resources, including rooftop or community solar installations, microgrids, storage or other sources of electricity that do not rely on fossil fuels;

   4. Detailing how much FEMA funding in fiscal years 2018, 2019. 2020 and 2021 was directed to utilities, including the names of the utilities and how much they received;

   5. Detailing how much FEMA funding in fiscal years 2018, 2019. 2020 and 2021 was directed toward energy efficiency initiatives, including weatherization or any other measures designed to improve home or business energy efficiency; and

   6. Detailing how much FEMA funding in fiscal years 2018, 2019. 2020 and 2021 was directed toward utility bill assistance, including heat, electricity, and water.

25. On December 17, 2021 Defendants acknowledged receipt of the request.

26. In May, 2022 the Center submitted two separate requests for an update on the request, but received no response.

27. On June 3, 2022, the Center sent FEMA a letter notifying the agency that it was violating the FOIA by failing to provide responsive records and other information on the status of the FOIA request.

28. On June 6, 2022, Defendants responded by asking for clarification concerning certain aspects of the FOIA request.

29. On June 27, 2022, the Center clarified the December, 2021 FOIA Request by explaining that for Item Number 1 in the Request, the search may be limited to FEMA headquarters memos or reports discussing the transition from fossil fuels to renewable energy sources in FEMA's programs. The clarification also explained that for Item Numbers 2-5, the Request only seeks budget-related materials and the records that reflect FEMA's spending on the several categories identified.

30. On July 8, 2022 the Center requested confirmation that FEMA had received the Center's clarifications and is proceeding with the request.

31. On October 11, 2022, the Center once again requested confirmation that FEMA had received the Center's clarifications and is proceeding with the request.

32. On October 21, 2022, Defendants informed the Center that the Request had been sent to the appropriate program offices for responsive records.

33. To date, after more than twelve months of correspondence, FEMA has neither produced any records responsive to the Center's December, 2021 FOIA request, nor provided any anticipated timetable for doing so.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

Failure to Promptly Disclose Records Responsive to the Center's FOIA Request

34. Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

35. Defendants are violating FOIA by failing to promptly disclose records responsive to the Center's FOIA request. 5 U.S.C. § 552(a)(3)(A).

36. Defendants have not provided the Center with any records responsive to the Center's December 17, 2021 FOIA request.

37. On information and belief, Defendants currently have possession, custody, or control of the requested records.

38. Defendants have not claimed that FOIA's statutory exemptions apply to the records that the Center seeks, and has identified no legal basis for the failure to promptly disclose responsive records.

39. The Center has a statutory right to the records it seeks.

40. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to FEMA in the foreseeable future.

41. The Center's organizational activities are adversely affected by FEMA's failure to produce the requested records.

**SECOND CLAIM FOR RELIEF**

Failure to Conduct Adequate Searches for Records Responsive to the Center's FOIA Request

42. Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

43. The Center has a statutory right to have FEMA process its FOIA request in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

44. Defendants are violating the Center's rights in this regard by unlawfully failing to complete a search reasonably calculated to locate all records responsive to the Center's FOIA request.

45. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to FEMA in the foreseeable future.

46. The Center's organizational activities will be adversely affected if Defendants continues to violate FOIA's requirement to undertake a search reasonably calculated to locate records that are responsive to the Center's FOIA request.

## THIRD CLAIM FOR RELIEF

<u>Failure to Provide Reasonably Segregable Portions of Any Lawfully Exempt Records</u>

47. Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

48. The Center has a statutory right to any reasonably segregable portion of a record that contains information that is subject to any of FOIA's exemptions. 5 U.S.C. § 552(b).

49. Defendants are violating the Center's rights in this regard by unlawfully withholding reasonably segregable portions of any lawfully exempt records, if any, that are responsive to the Center's FOIA request.

50. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to FEMA in the foreseeable future.

51. The Center's organizational activities will be adversely affected if Defendants are allowed to continue violating FOIA's disclosure provisions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

  A. Order FEMA and DHS to conduct searches reasonably calculated to locate all records responsive to the Center's December 17, 2021 FOIA request, utilizing a cut-off date for such searches that is the date the searches are conducted, and promptly providing the Center with all responsive records and reasonably segregable portions of lawfully exempt records sought in this action.

  B. Declare that Defendants' failure to respond to Plaintiff's FOIA request, to timely undertake a search for, and to promptly disclose to Plaintiff all records responsive to Plaintiff's FOIA request, as alleged above, are unlawful under 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(A)(i).

  C. Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412.

  D. Grant such other and further relief as the Court may deem just and proper.

DATED: January 4, 2023

            Respectfully submitted,

            <u>/s/ Howard M. Crystal</u>
            Howard M. Crystal
            (D.C. Bar No. 446189)

            <u>/s/ Augusta C.F. Wilson</u>
            Augusta C.F. Wilson
            (*Pro Hac Vice* Application Pending)

            CENTER FOR BIOLOGICAL DIVERSITY
            1411 K Street NW, Suite 1300
            Washington, D.C. 20005
            Tel: (202) 809-6926
            Email: hcrystal@biologicaldiversity.org

            *Attorneys for Plaintiff*